## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| HAYWOOD EASTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:10-cv-00150-JEO |
| | ) | |
| AMERICAN HEALTH CORP., | ) | |
| d/b/a OAK TRACE AND | ) | |
| TERRACE OAKS CARE & | ) | |
| REHABILIRATION CENTERS, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on the motion of the defendant, American Health
Corporation, d/b/a Terrace Oaks Care and Rehabilitation Center (hereinafter "Terrace Oaks" or
the defendant), for summary judgment on the claims of the plaintiff, Haywood Easter (hereinafter
"Easter" or the plaintiff).  (Doc. 9).[1]  Upon consideration of the motion, the court finds that it is
due to be granted.

## I.    BACKGROUND

The plaintiff filed this lawsuit on January 26, 2009, in the Circuit Court of Jefferson
County, Alabama against Terrace Oaks and other individual defendants who are currently not
parties to this suit.  (Doc. 1 at 3 of 155).  The complaint was subsequently amended and now
asserts claims for negligence/wantonness, breach of contract and negligent/wanton supervision,
training and inadequate staffing.  (Doc. 1 at 117 of 155).  Specifically, the complaint alleges that

---

[1] References herein to "Doc. ___" are to the document numbers assigned by the Clerk of the Court and are
located at the top of each document.

Terrace Oaks breached the standard of care owed to him by: (1) failing to monitor or manage a wound to his left foot and leg, (2) failing to recognize, assess and diagnose the severity of his wounds, (3) failing to provide required nursing care and timely medical intervention for treatment of his wounds, (4) failing to consult with qualified wound specialists, wound clinicians or vascular surgeons, (5) failing to properly treat his wounds and (6) failing to administer prescribed medications for treatment of his wounds and injuries.  (*Id*.)  The plaintiff specifically claims that Terrace Oaks breached the standard of care by "causing or allowing the plaintiff to suffer several falls including falling from the bed and falling from [the] wheel[chair]."  (*Id*. at 120 of 155, ¶ 18).  The plaintiff next claims that the defendant breached the terms of its contract with the plaintiff.  (*Id*. at 123 of 155).  The plaintiff's last substantive claim is that the defendant failed to properly train and supervise its employees and failed  to provide adequate staff to meet the plaintiff's needs.  (*Id*. at 123 of 155).  The claims are governed by the Alabama Medical Liability Act.

The case was removed to this court on January 25, 2010.  (Doc. 1).  The defendant's motion for summary judgment on all the plaintiff's claims was filed on August 23, 2010.  It has been fully briefed by the defendant.  The plaintiff did not file a response to the same.

II.     FACTS[2]

Easter was a resident at Terrace Oaks from December 20, 2007, until January 23, 2009,

with intermittent admissions to the hospital.  He was 61 years old at the time of his admission.

He was admitted with multiple diagnoses including an open wound to his right knee/leg,

peripheral vascular disease (hereinafter "PVS") syndrome, depressive disorder, and alcohol and

tobacco abuse.  (Def. Ex. D, pp. TO 561-62, 633, 649).[3]

Prior to his admission to Terrace Oaks, the plaintiff had been hospitalized at the VA since

November 27, 2007, for chronic right lower extremity wounds.  He had a ten year plus history of

chronic wounds to the right lower extremity.  Lower extremity studies were done that revealed

occlusion of the arteries at different levels on both the right and left lower extremities.  He also

had extensive PVS, and on December 13, 2007, he underwent a right axillary bi-femoral bypass.

(Def. Ex. E, pp. VA 706-708).[4]  While hospitalized at the Veterans' Hospital in Birmingham,

Alabama (hereinafter "VA"), he also sustained a fall due to feeling weak.  (*Id*. at  VA 1950).

Upon admission to Terrace Oaks, his records demonstrate that he had a history of falling.

(Def. Ex. D at  p. TO 885).  During the time the plaintiff was a resident at Terrace Oaks, he

sustained several falls.  The staff implemented various interventions, including reminders and

---

[2]Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts.  *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party).  This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.  This factual background is consistent with the undisputed, material facts of record. The "facts" have been construed in a light most favorable to the plaintiff where there is evidentiary support for plaintiff's position regarding the "facts."

[3]References herein to "TO ___" are to the medical records for Terrace Oaks.

[4]References herein to "VA ___" are to the medical records for the Birmingham Veterans' Hospital.

3

encouragement to the plaintiff to call for assistance, reminding him to lock the wheels on his wheelchair, placement of a ½ side rail on his bed, placement of a sensor pad on his bed to note activity, and use of a low bed with a safety mat on the side of the same.  No injuries were noted after the falls.

The staff at Terrace Oaks notified Michael Rosemore, D.O., Medical Director at Terrace Oaks, of the plaintiff's falls.  Additionally, Henrietta Gray, the plaintiff's mother and sponsor, was notified.  (Def. Ex. D at pp. TO 557-58, 662, 670, 672).

When the plaintiff was admitted to the defendant's facility, wound care orders were initiated concerning the right lower extremity wound.  (Def. Ex. D at pp. TO 586).  Mr. Easter was non-compliant with his wound care, including refusing to wear the wound VAC (vacuum/drain) and removing the dressing on his leg.  (*Id*. at pp. TO 587, 608, 616, 643, 652-53, 657, 659-60, 700, 820, 847).  Care plan meetings were held at Terrace Oaks and the plaintiff and his mother were invited to attend.  Ms. Gray was kept informed of the plaintiff's status.  (*Id*. at pp. TO 652-53, 656-60, 662, 715, 820).

The plaintiff's continued treatment included being seen for clinic visits at the VA.  His condition was further monitored by a vascular surgeon.  An "above the knee amputation" was recommended on multiple occasions by the staff at the VA hospital.  The plaintiff, however, refused.  (Def. Ex. E at pp. VA 1415-17, 1421-23, 1453-54, 1481-82).  In September 2008, additional lower extremity studies were done at the VA.  The studies revealed that a graft done in December 2007 was failing and occlusion was noted at the cross femoral segment.  The Ankle-Brachial Index (hereinafter "ABI") test done of the plaintiff's right and left lower extremities was abnormal and poor.  He could not straighten his left leg, as it would not bend at the knee.  (*Id*. at

4

pp. VA 196-202, 1415-17).

Around the beginning of November 2008, the plaintiff's right lower extremity wound closed, but scar tissue remained, so protective skin care was provided.  (*Id*. at pp. TO 630-31, 671-72, 683).  Wounds around his left knee and foot were noted at the end of November 2008, so he was transferred to the University of Alabama in Birmingham Hospital West for evaluation. Upon readmission to Terrace Oaks, wound care orders were entered and treatment was started. (*Id*. at pp. TO 200, 632, 672).

The plaintiff was hospitalized at the VA on December 4, 2008.  (Def. Ex. E at pp. VA 696).  Additional lower extremity studies were done at the hospital on December 5, 2008.  The studies showed right superficial femoral artery/popliteal/tibial peroneal disease and left iliac, superficial femoral artery occlusive disease.  (*Id*. at pp. VA 239-40).  The femoral artery-to-femoral-artery bypass that was done in December 2007 had clotted off and was not functional.  It was noted at the VA that surgical intervention was not planned since the recommended surgery would be an amputation and it was uncertain whether Mr. Easter would be able to heal the surgical wound/stump given the state of the December 2007 graft and limited inflow.  (*Id*. at pp. VA 239-40, 696-705, 1268, 1290).  The plaintiff remained hospitalized at the VA until December 16, 2008, when he was discharged back to Terrace Oaks.  (*Id*. at pp. VA  696).

He continued to receive wound care at Terrace Oaks to the left leg wounds, but also continued to be non-compliant with the care, including removing the PICC line that provided him antibiotic therapy.  (*Id*. pp. TO 391, 403, 515).

In January 2009, an examination at the VA hospital revealed that the plaintiff had no dorsalis pedis pulse on the left side and his left foot was cold to touch.  He was again diagnosed

5

with severe PVD, and the left foot was observed to have undergone gangrenous change. Vascular surgery was consulted again and recommended palliative and supportive care as opposed to surgery because the plaintiff was not seen as a candidate for amputation. (Def. Ex. E at pp. VA 692-96).

On January 23, 2009, the plaintiff was seen at UAB Hospital. Examination by the vascular surgeon revealed dry gangrene with breakdown of the skin. After repeatedly refusing amputation in the past, the plaintiff consented to left above the knee amputation, which was performed on January 27, 2009. He was diagnosed with left lower extremity ischemic necrosis from atherosclerosis. (Def. Ex. G at pp. UAB 6-9, 11).

III.    SUMMARY JUDGMENT STANDARD

A.      Generally

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.*

at 324.

The substantive law will identify which facts are material and which are irrelevant. *See, e.g., Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See, e.g., Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.* facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method,

7

the non-moving party must respond with positive evidence sufficient to resist a motion for

directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at

trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of

any evidence in the record in support of a judgment for the non-moving party on the issue in

question.  This method requires more than a simple statement that the non-moving party cannot

meet its burden at trial but does not require evidence negating the non-movant's claim; it requires

the movant to point out to the court that there is an absence of evidence to support the non-

moving party's case.  *See Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden

by using this second method, the non-moving party may either point to evidence in the court

record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the

non-moving party may come forward with additional evidence sufficient to withstand a directed

verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding,

the non-movant can no longer rest on mere allegations, but must set forth evidence of specific

facts.  *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 561 (1992)).

    **B.**    **Standard of Care and Proximate Cause in AMLA Cases**

As this is an action under the AMLA, the plaintiff must present substantial evidence

establishing (1) the applicable standard of care, (2) that the standard of care was breached, and

(3) that the breach was the proximate cause of the plaintiff's injuries.  *Golden v. Stein,* 670 So. 2d

904, 906-07 (Ala.1995).  Alabama Code § 6-5-548(b) provides that:

In any action for injury or damages or wrongful death, whether in contract or in

> tort, against a health care provider for breach of the standard of care the plaintiff shall have the burden of providing by substantial evidence that the health care provider failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.

Substantial evidence is "that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed." ALA. CODE § 6-5-542(a). The plaintiff's requisite burden of proof of causation is that the alleged negligence "probably caused the injury." *Travis v. Scott,* 667 So. 2d 674, 675 (Ala. 1995). "[T]here must be more than a mere possibility or one possibility among others that the negligence complained of caused the injury." *Id.*

### C.      Expert Testimony Required

As a general rule, a medical malpractice plaintiff must use expert testimony to show, by substantial evidence, that the standard of care was breached and that the breach was the proximate cause of the plaintiff's injuries. *Anderson v. Alabama Reference Labs,* 778 So. 2d 806, 811 (Ala. 2000). Although there are exceptions to this expert testimony requirement, none apply to the facts of this case. "To prove causation in a medical malpractice case, the plaintiff must prove, through expert medical testimony, that the alleged negligence probably caused, rather than only possibly caused, the plaintiff's injury." *University of Alabama Health Services Foundation, P.C. v. Bush By and Through Bush,* 638 So. 2d 794, 802 (Ala. 1994). The plaintiff's failure to establish through expert testimony either a breach in the standard of care or the requisite proximate cause results in a lack of proof of an essential element to a medical malpractice case. *See Pope v. Elder,* 671 So. 2d 730, 732 (Ala. Civ. App. 1995) (stating that the plaintiff's argument concerning the standard of care need not be addressed because there was a

complete failure to offer any evidence that defendant's conduct proximately caused the deceased's death); *Pruitt v. Zeiger,* 590 So. 2d 236, 238 (Ala. 1991) (holding that the only expert testimony offered failed to establish the applicable standard of care, and therefore, failed to present any expert medical evidence of malpractice on the defendant's part); *Smith v. Medical Center East, et al.,* 585 So. 2d 1325, 1330(Ala. 1991) (holding that the plaintiff failed to produce evidence that the defendants' alleged negligence probably caused the deceased's death).

## IV.   DISCUSSION

The defendant asserts that the evidence presented in the expert report of Cathy James, the Director of Nursing for the defendant, shows that the care and treatment provided to the plaintiff never fell below the acceptable standard of care to which the health care providers were required to adhere.  Ms. James opines that the nurses acted within the standard of care in that appropriate measures to prevent skin breakdown were instituted and once skin breakdown occurred, measures to treat the wounds were implemented and the physician's orders were followed.  The wound care provided by the nurses complied with the applicable standard of care.  (Doc. 11-3 ). The nurses also met the standard of care in keeping the physicians and sponsor informed of the plaintiff's condition, including any changes in his condition and concerning the progression of his wounds.  (*Id*.)  Furthermore, she asserts, that the nurses acted in accordance with the standard of care in their education and re-education of appropriate footwear given the fragile condition of the plaintiff's feet due to his diagnosis of peripheral vascular disease (PVD).  Additionally, Ms. James opines that the standard of care was met as measures to decrease the likelihood of falls and lessen the severity of injury should a fall occur were in place.  According to Ms. James, the staff appropriately offered assistance with his activities of daily living and transfers to lessen the

likelihood of a fall or injury.  It is also her opinion that the staffing at Terrace Oaks was adequate. (*Id*.)

The defendant argues that it has put forth substantial evidence showing that it has met the standard of care required in providing health care to the plaintiff.  In accordance with the AMLA, it asserts, the plaintiff is required by law to rebut this motion with expert testimony of his own.  The defendant goes on to argue that the plaintiff has failed to present substantial evidence that Terrace Oaks breached the standard of care and that any alleged injuries were proximately caused by the defendant.  Further, it asserts that the plaintiff has failed to identify any expert in the time required by this court's Scheduling Order.  It concludes that the plaintiff is thus "unable to counter this Motion and support his claims with expert testimony as required by the AMLA.  Therefore, this defendant is entitled to summary judgment."  The court agrees.

Despite offering the plaintiff and his counsel adequate time to formulate a response and submit evidence concerning this motion.  They have has failed to do so.  The court has independently reviewed the record before it and finds that no evidence demonstrates that the applicable standard of care has not been met.  To the contrary, the evidence conclusively shows that it was met.  The defendant's motion for summary judgment is due to be granted.

V.     **CONCLUSION**

Premised on the foregoing, the defendant's motion for summary judgment (doc. 9) is due to be granted.  An appropriate order will be entered.

**DONE**, this the 14th day of January, 2011.

*John E. Ott*

JOHN E. OTT
United States Magistrate Judge

11